UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ELIEZER A. POVENTUD,

                Plaintiff,

v.                                         Case No. 18-cv-532-pp

GAYLE S. SALDARIS, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT.NO. 2) AND SCREENING COMPLAINT (DKT. NO. 1)**

The plaintiff, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows an incarcerated plaintiff to proceed with his lawsuit without prepaying the civil filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On May 3, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $44.01. Dkt. No. 7. The court received that fee on May 21, 2018. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. He must pay the balance of $305.99 over time in the manner explained at the end of this order.

## II. Screening the Plaintiff's Complaint

### A. *Federal Screening Standard*

Although the plaintiff has demonstrated that he does not have the money to pay the filing fee, the court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). For this reason, district courts "screen" complaints filed by self-represented plaintiffs to determine whether the complaint states a claim for which a federal court may grant relief.

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) the person who deprived him of that right was acting

2

under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    B.    *The Plaintiff's Allegations*

During 2014, the plaintiff was a prisoner at Green Bay Correctional Institution. Dkt. No. 1 at ¶35. The plaintiff worked in the main kitchen as a food service worker under defendant (and chef) Gayle Saldaris' supervision. Id. The plaintiff alleges that during June and July of that year, Saldaris repeatedly sexually harassed and assaulted him. Id. Saldaris took him to areas not monitored by surveillance cameras, including walk-in freezers, dry storage and a staff break room. Id. The plaintiff alleges that Saldaris forced him to engage in sexual acts with her. Id. He says that she told him to "act normal around her" in the presence of staff and inmates, or she would allege that he'd groped and fondled her and he'd be put in segregation. Id. The plaintiff says that Saldaris made "clear" to him that if he "refused to participate in these sessions she would simply replace [him], meaning [he] would in the least be fired from [his] job and likely reported or sexual abuse to her." Id. The plaintiff alleges he felt scared. Id.

Around March 23, 2015, a detective from the Brown County sheriff's department interviewed the plaintiff. Id. at ¶36. During the interview, the

plaintiff told the detective about Saldaris and the sexual abuse. Id. The plaintiff alleges that the detective recorded his written statement and assured him that he would start an appropriate investigation. Id. The detective "specifically advised [him] to not file any other verbal and/or written complaints" about the assault or to discuss them with anyone else. Id. The plaintiff transferred to Columbia Correctional Institution shortly after speaking with the detective, in April or May of 2015. Id.

The plaintiff alleges that once he arrived at Columbia, he did as the detective had instructed him, making no mention of the abuse at Green Bay. Id. at ¶37. Around November 2015, the plaintiff received a letter from the Office of the Brown County Victim Witness Coordinator that indicated that Saldaris was scheduled for a sentencing hearing on February 9, 2016,[1] and that the plaintiff was a victim. Id. After realizing that his report of sexual abuse had been investigated and substantiated (without any further contact from anyone), the plaintiff asked for counseling through the Psychological Services Unit (PSU), as well as "requesting via request and through the [Inmate Complaint Review System] to speak with 'victim services.'" Id.

Sometime in July or August of 2015, Dr. Norge saw the plaintiff in disciplinary segregation. Id. at ¶38. The plaintiff told Dr. Norge that he was having a difficult time dealing with the results of the assaults (depression, fear, paranoia, embarrassment, nightmares). Id. Dr. Norge provided the plaintiff with

---

[1] In his complaint, the plaintiff states that Saldaris was to be sentenced February 9, *2015*, but given the date of the letter (November 2015), the court believes this was a typo, and that the plaintiff means February 2016.

4

medication to help his anxiety, and he also "orientated [him] of [his] rights as a victim" and gave him a PREA (Prison Rape Elimination Act) handbook. Id. The plaintiff did file a PREA complaint, which was ultimately substantiated. Id. at ¶¶39-40. It was only then—once investigators substantiated the complaint—that a therapist started to see the plaintiff "regarding the fall out of the abuse/assaults." Id. at ¶41.

The complaint also alleges that the plaintiff moved from Columbia to the Wisconsin Secure Program Facility (WSPF) in March 2016. Id. at ¶42. The plaintiff alleges that once at WSPF, he notified defendant Warden Boughton, defendant Deputy Warden Winkelski, defendant Security Director Kartman, the PSU, and Victim Coordination Services about the abuse/assaults Saldaris had perpetrated against him. Id. Only someone named Ms. Sebranek, from the PSU, responded. Id. During their meetings, Sebranek told the plaintiff she could tell he was not coping well and requested that the plaintiff be transferred to the Wisconsin Resource Center so that he could receive better mental health care. Id. The deputy warden "overruled" Sebranek's recommendation, "citing 'security concerns.'" Id.

The plaintiff alleges that in April 2016, defendant Mink contacted him and said that Deputy Warden appointed her to "deal with [the plaintiff's] victim status." Id. at ¶43. He states that he has not seen or received any communication from her since (over two years later). Id. The plaintiff further alleges that on May 17, 2017, defendant Rubin-Asch contacted him and informed him that he was the new psychological supervisor. Id. at ¶44. The

5

plaintiff told Rubin-Asch about his previous interactions with that department, and that he had been ignored. Id. Rubin-Asch told the plaintiff he would look into that issue, and that he would evaluate the plaintiff himself, as well as set up a regular visit and programming in an effort to lessen "the effects being suffered." Id.

The plaintiff also states that since his transfer to WSPF, he has "become steadily reluctant" to have any interactions with staff or with his family and friends. Id. at ¶45. The plaintiff feels that the staff are "out to get" him for reporting Saldaris' assaults, and that they are "continuously talking about it to each other." Id. He is afraid that he is being "set up for pay back." Id. He says that in order to see his friends and family, he has to consent to strip searches—"something that has never been an issue for [him] in the past"—and that he dreads these searches. Id. This puts distance between him and his family, and when he does see them, he fears they'll ask him about the assaults, a topic he finds embarrassing and shameful. Id.

The plaintiff seeks compensatory and punitive damages against the defendants. Id. at p. 7.

    C.    *The Court's Analysis*

The plaintiff has sued the Wisconsin Department of Corrections, Gayle Saldaris, Bohannan (food service leader), Dave Brooks (food service manager), Rick Karl (food service leader), Warden Brian Foster, Deputy Warden Sarah Cooper, Captain Schultz (acting Security Director at the time), Captain Brandt (the plaintiff does not explain his role), Steven Schmidt (psychological services

6

worker), Martha Breen (psychological services worker), C.O. Goldsmith (a correctional officer in charge of distributing PREA information), Michael Dittman (the plaintiff does not explain his role), Deputy Warden Hautamaki, Security Director Weber, Lieutenant Vangheem (the plaintiff does not explain his/her role), Ms. Julie (guidance counselor/secretary for education), Captain Keller (the plaintiff does not explain his/her role), Dan Norge (PSU worker), Gary Maier (PSU worker), Bill E. Searls (PREA investigator), Anthony Ashworth (PREA investigator), Heidi Mellenberger (PREA investigator), Kimberly Betzhold (PREA investigator), Warden Gary Boughton, Mark R. Kartman (the plaintiff does not explain his role), Angie Mink (PSU worker), Sarah Home (PSU worker), Scot Rubin-Asch (who identified himself to the plaintiff as the PSU supervisor in 2017), Deputy Warden Daniel Winkelski, and Captain Stevens (the plaintiff does not identify his/her role), as well as John and Jane Does.

Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (quoting Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994)). In other words, because §1983 makes public employees liable "for their own misdeeds but not for anyone else's," Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir.2009), a plaintiff must specify in his allegations what each individual defendant did (or did not do) to violate his constitutional rights.

The plaintiff does not make any specific factual allegations against most of the defendants he has sued; they appear only in the caption of the complaint and in the "PARTIES" section at paragraphs 1-30. They are: Brian Foster, Sarah Cooper, Captain Schultz, Captain Brandt, Captain Stevens, Dave Brooks, Lieutenant Vangheem, Bohannan, Rick Karl, Steven Schmidt, Martha Breen, C.O. Goldsmith, Deputy Warden Hautamaki, Security Director Weber and Gary Maier. Because the plaintiff has not explained what any of these defendants did to violate his constitutional rights, the court will dismiss them from the lawsuit. The plaintiff listed Lieutenant Vanlanen and John and Jane Does *only* in the caption of the complaint; he did not even mention them in paragraphs 1 through 30, listing the defendants. The court dismisses these defendants.

Four of the defendants the plaintiff sued were PREA investigators: Bill E. Searls, Anthony Ashworth, Heidi Mellenberger and Kimberly Betzhold. The PREA does not create a private right of action. See Rivera v. Drake, No. 09-CV-1182, 2010 WL 1172602, *3 (E.D. Wis. Mar. 23, 2010) (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002)). The PREA was enacted to "study the problem of prison rape and to provide funding and expertise to address it." Id. (quoting Kane v. Winn, 319 F. Supp. 2d 162 (D. Mass. 2004)). It does not provide a basis for a plaintiff to sue a PREA investigator. The plaintiff also mentions PREA liaison Captain Keller, and says that Keller never interviewed him. Again, the PREA does not create a private right of action against PREA liaisons. The court will dismiss these five defendants.

8

The plaintiff alleges that Norge, Mink, Hoem and Rubin-Asch failed to provide him with adequate medical (psychological) care. To state an Eighth Amendment claim based on deficient medical care, a plaintiff must show (1) that he had an objectively serious medical condition; and (2) that the named defendants showed deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (citing Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006)). The court is satisfied that plaintiff's psychological issues stemming from the abuse were—and are—objectively serious. The question is whether the plaintiff has alleged sufficient facts against each of these defendants to establish that they acted with deliberate indifference to his psychological issues.

The plaintiff made no specific factual allegations against Hoem, except to allege that the care she provided him was deficient. Id. at ¶58. He has not said what he asked Hoem to do, or explained what care Hoem gave him (or didn't give him), or explained how any care Hoem did give him was deficient. His claim that Hoem provided deficient medical care is a conclusory allegation, and "conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth." McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011) (citing Iqbal, 556 U.S. at 680-81). The plaintiff may not proceed against Hoem.

As for Norge and Rubin-Asch, the plaintiff's own facts demonstrate that both defendants provided him care. Norge prescribed him medication and gave him information about PREA; Rubin-Asch told the plaintiff that he would

9

evaluate the plaintiff and set up meetings and programming. While the plaintiff states in paragraph 58 of the complaint that these defendants provided deficient care because they only asked him to re-tell his abuse without any other course of treatment, that statement contradicts what he said earlier in the complaint about the help they provided him. The court will not allow the plaintiff to proceed against Norge and Rubin-Asch.

The court will allow the plaintiff to proceed on a deliberate indifference claim against Mink. Mink allegedly worked in the PSU. The plaintiff alleges that she contacted him and told him that she would be working with him relating to his status as a sexual assault victim. He asserts, however, that other than this introduction, Mink never contacted him again, and never provided him any care. This is enough to state a claim that Mink knew the plaintiff was suffering, but did nothing to help him.

The plaintiff also has stated sufficient facts to allow him to proceed on an Eighth Amendment cruel-and-unusual-punishment claim against Saldaris based on his allegations that she subjected him to sexual harassment, abuse and assault. See Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); see also Velez v. Kamin, No. 07-C-571, 2007 WL 2007589 (E.D. Wis. Jul. 6, 2007) (allowing case to proceed on Eighth Amendment cruel and unusual claim where defendant made improper sexual advances and engaged in forced physical contact with the plaintiff).

The plaintiff asserted an Eighth Amendment failure to protect claim against "Green [B]ay correctional and administrative staff" because they "failed

10

to protect [him] by failing to act" when they heard reports about Saldaris'
behavior. The court first notes that the plaintiff did not identify any specific
staff members who failed to protect him. More importantly, the Eighth
Amendment does require prison officials to "take reasonable measures to
guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832
(1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To state a
failure to protect claim, a plaintiff-inmate must allege that (1) "he is
incarcerated under conditions posing a substantial risk of serious harm," and
(2) defendant-officials acted with "deliberate indifference" to that risk. Id. at
834. For an official to be deliberately indifferent, he or she must have actual
knowledge about the risk of harm. Brown v. Budz, 398 F.3d 904, 913 (7th Cir.
2005). The plaintiff says that he followed the detective's direction to not file a
complaint or speak to anyone about what happened to him—this means that
he did not tell prison officials what Saldaris was doing to him. If the plaintiff
did not tell any staff members about what happened, there is no way they
could have "actual knowledge" that he was at risk. The plaintiff cannot proceed
on a failure-to-protect claim.

  The plaintiff also may not proceed against the Wisconsin Department of
Corrections. "[S]tates and their agencies are not 'persons' subject to suit under
42 U.S.C. § 1983." Johnson v. Supreme Court of Ill., 165 F.3d 1140, 1141 (7th
Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's
Department of Corrections is a proper defendant." Andreola v. Wisconsin, 171

F. App'x 514, 515 (7th Cir. 2006). Because the DOC is not a "person" subject to suit under §1983, the court will dismiss it as a defendant.

Finally, the court will dismiss defendants Gary Boughton, Dan Winkleski and Mark Kartman. The plaintiff alleges only that he let these defendants know about the assault and abuse when he arrived at WSPF and that he never heard back from them. He does not allege that he asked these defendants to do anything for him. He does not say what he expected them to do. Defendants Winkleski and Boughton are not medical staff, or PSU staff. They did not have the ability to treat him. The plaintiff does not even explain what Kartman's job was. The plaintiff has not stated claims against these defendants.

The plaintiff lists 42 U.S.C. §1983 as a separate, stand-alone cause of action. He did not need to do so—section 1983 is the law that allows him to allege that certain defendants violated his constitutional rights. To the extent that the court has allowed the plaintiff to proceed against Salderis and Mink, it is allowing him to do so under §1983 and the Eighth Amendment.

Finally, the plaintiff stated a separate, stand-alone claim that the defendants failed to protect him from violations of his rights. Again, he did not need a stand-alone claim for this. To the extent that the court is allowing him to proceed on claims against Salderis and Mink, the court is allowing him to argue that they deprived him of his constitutional rights and protections.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** that defendants Wisconsin Department of Corrections, Bohannan, Dave Brooks, Rick Karl, Warden Brian Foster, Deputy Warden Sarah Cooper, Captain Schultz, Captain Brandt, Dr. Steven Schmidt, Martha Breen, C.O. Goldsmith, Michael Dittman, Deputy Warden Hautamaki, Dr. Weber, Lieutenant Vangheem, Ms. Julie, Captain Keller, Gary Maier, Bill E. Searls, Anthony Ashworth, Heidi Mellenberger, Kimberly Betzhold, Warden Gary Boughton, Mark R. Kartman, Deputy Warden Daniel Winkelski, Captain Stevens, Dan Norge, Sarah Hoem, Scot Rubin-Asch and John and Jane Does are **DISMISSED** as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order will be electronically transmitted to the Wisconsin Department of Justice for service on defendants Gayle Saldaris and Angie Mink. The court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $305.99 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the

transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for all pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[2] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 16th day of January, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**